**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MACNEIL AUTOMOTIVE PRODUCTS** | ) | |
| **LIMITED, an Illinois Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WINFIELD CONSUMER PRODUCTS,** | ) | |
| **INC., a Kansas Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, MacNeil Automotive Products Limited, by its undersigned attorneys, for its Complaint against defendant Winfield Consumer Products, Inc., alleges as follows:

## NATURE OF THE ACTION

1. This is an action against Winfield Consumer Products, Inc. for patent infringement, trademark and trade dress infringement, false patent marking, unfair competition, unjust enrichment and violations of the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act.

## PARTIES

2. Plaintiff MacNeil Automotive Products Limited ("MacNeil") is a corporation organized under the laws of the State of Illinois with a principal place of business located at 2435 Wisconsin Street, Downers Grove, Illinois 60515-4018. MacNeil is a manufacturer and supplier of automotive accessories including, among other things, floor liners and mats.

3. Upon information and belief, Defendant Winfield Consumer Products, Inc. ("Winfield") is a corporation organized under the laws of Kansas with its principal place of

business located at Winfield, Kansas.  Winfield is a manufacturer and supplier of automotive accessories and floor liners for automotive vehicles.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because MacNeil's claims arise under the laws of the United States.  This Court has supplemental jurisdiction over MacNeil's state law claims pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over Winfield due to its systematic and continuous business connections and contacts with Illinois.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c), 1395(a) 1400(b) because Winfield is subject to personal jurisdiction in, does business in and has committed acts of infringement in this district and has systematic and continuous business connections and contacts with this district.

## FACTUAL BACKGROUND

6.      MacNeil is the exclusive licensee of three U.S. Patents:  United States Patent No. 7,444,748 ("the '748 patent"), attached hereto as Exhibit 1, was duly and legally issued on November 4, 2008; United States Patent No. 7,607,713 ("the '713 patent"), attached hereto as Exhibit 2, was duly and legally issued on October 27, 2009; and United States Patent No. 7,686,371 ("the '371 patent"), attached hereto as Exhibit 3, was duly and legally issued on March 30, 2010.  These patents collectively shall be referred to herein as the "Subject Patents."

7.      As the exclusive licensee of all right, title and interest in the Subject Patents, MacNeil has standing to sue for infringement of the Subject Patents and may seek monetary damages, injunctions and other relief pursuant to 35 U.S.C. § 271 for past, current and future infringement of the Subject Patents.  The exclusive license is attached hereto as Exhibit 4.

8.     MacNeil is the exclusive licensee of U.S. Trademark Registration No. 3,534,011 for the mark WEATHERTECH®, for, among other things, "floor trays for land vehicles."  A copy of duly and legally issued Registration No. 3,534,011 is attached hereto as Exhibit 5.

9.     As the exclusive licensee of all right, title and interest in the WEATHERTECH® mark, MacNeil has standing to sue for infringement of the mark and may seek monetary damages, injunctions and other relief for past, current and future infringement of the mark.

10.     Since 2005, MacNeil has manufactured, distributed, advertised and sold to consumers throughout the United States its floor liners/trays, which are digitally measured for precise fit for certain makes and models of vehicles, under the WEATHERTECH® mark.

11.     To MacNeil's knowledge and at all times relevant to this Complaint, its only substantial competitor with regard to floor liners/trays is and has been Winfield.  Both before and for about three years after MacNeil began selling its WEATHERTECH® floor liners/trays, Winfield advertised and sold its floor liners/trays solely under the Husky Liners® mark in a white box.  *See* Exhibit 6, which are true and correct copies of photographs of Winfield's prior packaging.

12.     Since MacNeil began selling its floor liners/trays under the WEATHERTECH® mark, MacNeil also has developed and adopted a unique and distinctive overall packaging appearance for its floor liners/trays such that consumers and the trade are easily able to identify such products as originating from MacNeil.  These unique and overall distinctive characteristics include the color scheme of the WEATHERTECH® mark (using silver, black and red in the mark), the prominent use of the mark such that it appears as "WeatherTech", and the layout of the packaging materials, such as the multiple photographs on the side of the box, the informational layout on the back of the box, and the placement of the photographs on the front of

the box, as well as the color scheme of the packaging.  The unique and distinctive packaging appearance shall be referred to herein as MacNeil's "Trade Dress."  Examples of MacNeil's Trade Dress are attached hereto as Exhibit 7.  MacNeil's Trade Dress is not functional in any way.

13.    Long prior to the acts of Winfield described in this Complaint, MacNeil has extensively advertised and promoted its mark and MacNeil's Trade Dress.  As a result of the care and skill exercised by MacNeil and the quality of its superior floor liner/tray product, and because of the extensive advertising, promotion, sales and public acceptance of MacNeil's mark and Trade Dress, MacNeil's floor liners/trays have acquired a fine and valuable reputation.  The public recognizes MacNeil's mark and Trade Dress and that it identifies MacNeil's products exclusively.  MacNeil's floor liners/trays have acquired an outstanding celebrity and symbolize the fine reputation and goodwill that MacNeil has created by distributing and selling products of high quality and by fair and honorable dealing with the trade and public in the distribution and sale of its floor liner/tray products.

14.    MacNeil's products are known for their superior quality of material and MacNeil's mark and trade dress are recognized by the public as symbols of those superior qualities.

15.    The identifying appearance of MacNeil's Trade Dress constitutes protectable property of MacNeil.

16.    MacNeil has spent and continues to spend substantial sums of money, time and effort to develop, advertise and promote its mark, Trade Dress and related products through, in part, distribution of catalogs and brochures, advertising campaigns, and national and international trade shows.  Indeed, MacNeil most recently made an expensive media buy in

support of the Chicago Blackhawks 2010 Stanley Cup Championship, which featured the WeatherTech mark.

17.    In or around early 2009, Winfield introduced, advertised, distributed and sold a new floor liner/tray product that it called WeatherBeater to consumers throughout the United States.  Winfield's name and packaging for this new "WeatherBeater" floor liner/tray product is a colorable imitation of MacNeil's mark and Trade Dress.  Examples of Winfield's packaging for its WeatherBeater product are attached hereto as Exhibit 8.

18.    Winfield's "WeatherBeater" name and packaging materials copy and/or are a colorable imitation of MacNeil's mark and the look and overall appearance of MacNeil's Trade Dress, including the elements described above, and are confusingly similar thereto.

19.    Winfield's WeatherBeater products are advertised, promoted and marketed in the same channels of trade as MacNeil's mark and Trade Dress in the United States, including this district.

20.    On information and belief, Winfield knew of MacNeil's mark, Trade Dress and MacNeil's hard-earned goodwill at all pertinent times prior to Winfield's first promotion and use of its infringing name and packaging appearance for its floor liners/trays.  Winfield deliberately adopted the WeatherBeater name and an appearance for its competing product's packaging materials to trade upon the hard-earned goodwill of MacNeil and Winfield has deliberately attempted to free-ride on MacNeil's mark and Trade Dress.

21.    Confusion has resulted and will be likely to continue to result from Winfield's conduct unless it is enjoined by this Court.

22.    MacNeil has been and will continue to be seriously and irreparably injured unless Winfield's conduct is enjoined by this Court.

23.    The WeatherBeater floor liner/tray is marked with Design Patent No. 372,011 ("the '011 design patent), a copy of which is attached hereto as Exhibit 9.  The '011 design patent does not cover Winfield's WeatherBeater product, but Winfield nevertheless chose to continue using this improper patent marking on the WeatherBeater product, with the intent to deceive the public and to gain a competitive advantage in the marketplace.

## COUNT I – PATENT INFRINGEMENT OF U.S. PATENT NO. 7,444,748

24.    MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

25.    Without the consent of MacNeil, Winfield has directly and/or indirectly infringed at least one claim of the '748 patent by making, using, selling and/or offering to sell its WeatherBeater floor liner/tray in the United States.

26.    Without the consent of MacNeil, Winfield has induced others to infringe the '748 patent by using, offering to sell and/or selling a product made according to a process claimed by the '748 patent.

27.    As a direct and proximate result of Winfield's infringement of the '748 patent, MacNeil has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which MacNeil is entitled to relief.

28.    Upon information and belief, Winfield's infringement of the '748 patent has been and continues to be willful and deliberate.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.    Enter judgment that Winfield has directly infringed the '748 patent;

B.    Enter judgment that Winfield has induced others to infringe the '748 patent;

C.     Enter judgment that Winfield has willfully infringed the '748 patent;

D.     Enter judgment that this case is found to be an "exceptional case" under 35 U.S.C. § 285;

E.     Enter a permanent injunction, pursuant to 35 U.S.C. § 283, restraining and enjoining Winfield and its respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Winfield from any further sales or use of products made by the infringed process and any other infringement of the '748 patent, whether direct or indirect;

F.     Enter judgment ordering Winfield to compensate MacNeil for Winfield's infringement of the '748 patent pursuant to 35 U.S.C. § 284;

G.     Enter a judgment ordering Winfield to pay enhanced damages pursuant to 35 U.S.C. § 284;

H.     Enter a judgment for an award of pre-judgment and post-judgment interest and costs to MacNeil pursuant to 35 U.S.C. § 284;

I.     Enter a judgment for an award of Plaintiffs' reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J.     Enter a permanent injunction pursuant to 35 U.S.C. § 283, restraining and enjoining Winfield and its respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Winfield, from employing the claimed process, from offering for sale or selling products made by the claimed process, and requiring destruction of all molds and tooling related to the claimed process; and

K.     Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT II – PATENT INFRINGEMENT OF U.S. PATENT NO. 7,686,371

29.     MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

30.     Without the consent of MacNeil, Winfield has directly and/or indirectly infringed at least one claim of the '371 patent by making, using, selling and/or offering to sell its WeatherBeater floor liner/tray in the United States.

31.     Without the consent of MacNeil, Winfield has induced infringement of at least one claim of the '371 patent in violation of 35 U.S.C. § 271 through, among other activities, offering for sale its WeatherBeater product, thereby inducing others to offer for sale, sell and use the infringing WeatherBeater product.

32.     As a direct and proximate result of Winfield's infringement of the '371 patent, MacNeil has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which MacNeil is entitled to relief.

33.     Upon information and belief, Winfield's infringement of the '371 patent has been and continues to be willful and deliberate.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.     Enter judgment that Winfield has directly infringed the '371 patent;

B.     Enter judgment that Winfield has induced infringement of the '371 patent;

C.     Enter judgment that Winfield has willfully infringed the '371 patent;

D.     Enter judgment that this case is found to be an "exceptional case" under 35 U.S.C. § 285;

E.       Enter a permanent injunction, pursuant to 35 U.S.C. § 283, restraining and enjoining Winfield and its respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Winfield from any further sales or use of its infringing product and any other infringement of the '371 patent, whether direct or indirect;

F.       Enter judgment ordering Winfield to compensate MacNeil for Winfield's infringement of the '371 patent pursuant to 35 U.S.C. § 284;

G.       Enter a judgment ordering Winfield to pay enhanced damages pursuant to 35 U.S.C. § 284;

H.       Enter a judgment for an award of pre-judgment and post-judgment interest and costs to MacNeil pursuant to 35 U.S.C. § 284;

I.       Enter a judgment for an award of Plaintiffs' reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J.       Enter a permanent injunction pursuant to 35 U.S.C. § 283, restraining and enjoining Winfield and its respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Winfield requiring destruction of all molds and tooling related to the claimed invention and preventing the use of the same; and

K.       Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT III – PATENT INFRINGEMENT OF U.S. PATENT NO. 7,607,713

34.     MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

35.     Without the consent of MacNeil, Winfield has contributorily infringed at least one claim of the '713 patent in violation of 35 U.S.C. § 271 through, among other activities, offering

for sale and selling its WeatherBeater product, thereby contributing to the infringing use of others of the WeatherBeater product as installed in vehicles for which those products were custom designed.

36.     As a direct and proximate result of Winfield's contributory infringement of the '713 patent, MacNeil has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which MacNeil is entitled to relief.

37.      Upon information and belief, Winfield's infringement of the '713 patent has been and continues to be willful and deliberate.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.     Enter judgment that Winfield has contributed to the infringement of the '713 patent;

B.     Enter judgment that Winfield has willfully infringed the '713 patent;

C.     Enter judgment that this case is found to be an "exceptional case" under 35 U.S.C. § 285;

D.     Enter a permanent injunction, pursuant to 35 U.S.C. § 283, restraining and enjoining Winfield and its respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Winfield from any further sales or use of its infringing product and any other infringement of the '713 patent, whether direct or indirect;

E.     Enter judgment ordering Winfield to compensate MacNeil for Winfield's infringement of the '713 patent pursuant to 35 U.S.C. § 284;

F.     Enter a judgment ordering Winfield to pay enhanced damages pursuant to 35 U.S.C. § 284;

G.      Enter a judgment for an award of pre-judgment and post-judgment interest and costs to MacNeil pursuant to 35 U.S.C. § 284;

H.      Enter a judgment for an award of Plaintiffs' reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

I.      Enter a permanent injunction pursuant to 35 U.S.C. § 283, restraining and enjoining Winfield and its respective officers, agents, servants, employees, attorneys, customers and those in concert or participation with Winfield requiring destruction of all molds and tooling related to the claimed invention and preventing the use of the same; and

J.      Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT IV – FEDERAL TRADEMARK INFRINGEMENT

38.      MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

39.      MacNeil is the exclusive licensee of the valid and subsisting, federally registered mark WEATHERTECH®, and the good will attendant therewith.

40.      Winfield's use in interstate commerce of the "WeatherBeater" name in connection with the promotion, advertisement and sales of its floor tray/liner constitutes a reproduction, counterfeit, copy and/or colorable imitation of the WEATHERTECH® mark and therefore infringes upon the same.

41.      Winfield's use of the WeatherBeater name is likely to cause confusion, mistake and/or deceive the public in violation of 15 U.S.C. § 1114.

42.      As a direct and proximate result of the foregoing acts of infringement, MacNeil has been and will continue to be actually damaged in the form of lost revenues and profits.  In

addition, MacNeil has been and will continue to be irreparably harmed by diminished good will and reputation, and the diminished capacity of its mark to act as a single source identifier.

43.     Winfield's intentional and willful infringement of the WEATHERTECH® mark, and disregard of MacNeil's rights, renders this case an exceptional case pursuant to 15 U.S.C. § 1117(a).

44.     MacNeil has no adequate remedy at law, because the WEATHERTECH® mark represents to the public MacNeil's identity, reputation and good will and the source of its goods and services.  Money damages alone cannot fully compensate MacNeil for the harm occasioned by Winfield's misconduct.

45.     Unless enjoined by the Court, Winfield will continue to use and infringe the mark to MacNeil's irreparable injury.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.     Enter a permanent injunction restraining and enjoining Winfield and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Winfield, from

      1)     Selling, marketing, advertising, importing or purchasing products under the infringing "WeatherBeater" name or infringing packaging appearance of Winfield as detailed in this Complaint;

      2)     Unfairly competing with MacNeil; and

      3)     Causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by MacNeil, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

B.      An Order, under 15 U.S.C. §§ 1116 and 1118, requiring Winfield (including its employees and agents) to deliver to MacNeil or requiring destroyed, all floor trays or liners of Winfield to which the "WeatherBeater" name is affixed, all molds and tooling for manufacturing such floor trays or liners, and all promotional and packaging materials related to Winfield's WeatherBeater product;

C.      An Order, pursuant to 15 U.S.C. § 1116, requiring Winfield to file with this Court and serve upon MacNeil within 30 days after the entry of the permanent injunction a report, in writing and under oath, setting forth in detail the manner and form in which Winfield has complied with the above two subparagraphs (A and B) of this prayer;

D.      An award to MacNeil, under 15 U.S.C. § 1117, of all profits received by Winfield from the sales and revenues of any kind made as a result of Winfield's sales of its WeatherBeater product, damages, to be determined, that MacNeil has suffered as a result of WeatherBeater's conduct and find that, due to the flagrant and deliberate character of such infringement and unfair competition, any such damages shall be trebled, and the costs of this litigation and find this case to be an exceptional case and therefore grant MacNeil its attorneys' fees in pursuing this litigation; and

E.      Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT V – FEDERAL UNFAIR COMPETITION

46.      MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

47.      Winfield intentionally and willfully has adopted and is using in interstate commerce in connection with the advertising, promotion and sale of its WeatherBeater floor

trays/liners, an overall packaging appearance that is intended by Winfield to be substantially similar to, and a colorable imitation of, the distinctive MacNeil Trade Dress.

48.     Winfield's unlawful adoption and use, in interstate commerce, of such a colorable imitation of MacNeil's Trade Dress without authorization of MacNeil is likely to cause confusion, to cause mistake and/or to deceive.

49.     Through the promotion, advertising and sale of such a confusingly similar packaging appearance, Winfield has unlawfully simulated, appropriated and infringed MacNeil's rights and its proprietary Trade Dress.   Such conduct and appropriation constitute a false description or representation of MacNeil's Trade Dress or a false designation of origin in violation of 15 U.S.C. § 1125(a).

50.     Winfield's conduct has injured and will injure MacNeil by diversion of MacNeil's goodwill and sales to Winfield, and by diminishing and destroying MacNeil's goodwill and reputation.  MacNeil seeks damages in such sum as may be proved at trial.  Further, MacNeil has been and continues to be irreparably harmed by Winfield's wrongful conduct.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.     Enter a permanent injunction restraining and enjoining Winfield and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Winfield, from

      1)     Selling, marketing, advertising, importing or purchasing WeatherBeater products manufactured by Winfield under the infringing "WeatherBeater" name or infringing packaging appearance of Winfield as detailed in this Complaint;

      2)     Unfairly competing with MacNeil; and

      3)     Causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by MacNeil, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

B.     An Order, under 15 U.S.C. §§ 1116 and 1118, requiring Winfield (including its employees and agents) to deliver to MacNeil or requiring destroyed, all floor trays or liners of Winfield to which the "WeatherBeater" name is affixed, all molds and tooling for manufacturing such floor trays or liners, and all promotional and packaging materials related to Winfield's WeatherBeater product;

C.     An Order, pursuant to 15 U.S.C. § 1116, requiring Winfield to file with this Court and serve upon MacNeil within 30 days after the entry of the permanent injunction a report, in writing and under oath, setting forth in detail the manner and form in which Winfield has complied with the above two subparagraphs (A and B) of this prayer;

D.     An award to MacNeil, under 15 U.S.C. § 1117, of all profits received by Winfield from the sales and revenues of any kind made as a result of Winfield's sales of its WeatherBeater product, damages, to be determined, that MacNeil has suffered as a result of WeatherBeater's conduct and find that, due to the flagrant and deliberate character of such infringement and unfair competition, any such damages shall be trebled, and the costs of this litigation and find this case to be an exceptional case and therefore grant MacNeil its attorneys' fees in pursuing this litigation; and

E.     Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VI – FALSE PATENT MARKING

51.     MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

52.     Winfield has marked its WeatherBeater product with the '011 design patent.  The design claimed by the '011 design patent does not cover Winfield's WeatherBeater product.

53.     Winfield marketed for sale to the public its WeatherBeater product marked with the number of the '011 design patent, US D372,011.

54.     On information and belief, Winfield violated 35 U.S.C. § 292(a) by marking, or causing to be marked, the packaging and/or product of the WeatherBeater floor tray/liner with the number of the '011 design patent, with the intent to deceive the public.

55.     Winfield cannot genuinely believe that the '011 design patent covers its WeatherBeater product.

56.     Each false marking on the products identified is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products.

57.     Winfield's false marking of products with the '011 design patent has wrongfully quelled competition with respect to such products, thereby causing harm to MacNeil, the UNITED STATES, and the public.

58.     Winfield wrongfully and illegally advertised a patent monopoly which it did not possess and, as a result, has benefited commercially and financially by maintaining false statements of patent rights.

59.     One-half of all monetary damages awarded to MacNeil under this Count shall be paid to the United States.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.      Order Winfield to pay a civil monetary fine of up to $500 per falsely marked article, one-half of which shall be paid to the United States;

B.      Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VII – ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

60.     MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

61.     Winfield's knowing and willful copying and colorable imitation of MacNeil's protected mark WEATHERTECH® and MacNeil's Trade Dress is intended by Winfield to allow it to free-ride on MacNeil's substantial investment in its mark and Trade Dress and the hard-earned goodwill and excellent reputation of MacNeil's WeatherTech floor liner/tray product.

62.     Winfield's knowing and continued sales of its WeatherBeater product to unsuspecting Illinois consumers has created a substantial likelihood of confusion and caused mistake and deception in Illinois consumers' minds because the WeatherBeater product is inferior to, and not the same as, MacNeil's WeatherTech floor liner/tray product.

63.     The above-described knowing and willful conduct constitutes deceptive trade practices within the meaning of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

64.     As a result of Winfield's continued sales of its WeatherBeater product, MacNeil has suffered and will continue to suffer irreparable harm to its goodwill and reputation with its

consumers, who confuse the WeatherBeater product for MacNeil's WeatherTech product. MacNeil has no adequate remedy at law for the immediate and continuing harm.

      A.     Enter a permanent injunction restraining and enjoining Winfield and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Winfield, from

      1)     Selling, marketing, advertising, importing or purchasing WeatherBeater products manufactured by Winfield under the infringing "WeatherBeater" name or infringing packaging appearance of Winfield as detailed in this Complaint;

      2)     Unfairly competing with MacNeil; and

      3)     Causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by MacNeil, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

      B.     An Order requiring Winfield to file with this Court and serve upon MacNeil within 30 days after the entry of the permanent injunction a report, in writing and under oath, setting forth in detail the manner and form in which Winfield has complied with the above subparagraph (A) of this prayer;

      C.     An award to MacNeil for its costs and attorneys' fees for this litigation; and

      D.     Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VIII – ILLINOIS COMMON LAW – UNFAIR COMPETITION

      65.     MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

66.     For many years, MacNeil has expended substantial sums of money creating, advertising, promoting, establishing and supporting its WEATHERTECH® mark and Trade Dress with its customers and Illinois and American consumers in general.

67.     As a result of MacNeil's substantial investment and hard work over the years, as well as MacNeil's commitment to quality, excellence and customer service, MacNeil has earned tremendous goodwill and a fine reputation with consumers and the trade, who associate MacNeil with its mark and Trade Dress.

68.     Winfield is aware of the above facts, and has sought to wrongfully capitalize on MacNeil's fine reputation and goodwill by advertising, promoting and selling its product under the WeatherBeater name, which is an intentional attempt to copy and/or create a colorable imitation of MacNeil's mark.   Winfield further has created its packaging materials in an intentional attempt to copy and/or create a colorable imitation of MacNeil's Trade Dress.  As a result of Winfield's wrongful conduct, Winfield is able to free-ride off of MacNeil's substantial investment and hard-work by causing confusion among consumers in the marketplace and attempting to identify or associate its WeatherBeater floor liner/tray product with MacNeil's product and/or confuse consumers that this is the case.   Separate and apart from causing confusion, Winfield's wrongful conduct also involves its ability to free-ride off of MacNeil's superior WeatherTech® product and the substantial investment and effort that MacNeil has put into developing the same.

69.     MacNeil has been, is, and will continue to be damaged by Winfield's actions and MacNeil does not have an adequate remedy at law.  Winfield's actions have damaged, and will continue to damage, MacNeil's business, market, reputation and goodwill.

WHEREFORE, MacNeil prays for entry of judgment in its favor and against Winfield as follows:

A.      Enter a permanent injunction restraining and enjoining Winfield and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Winfield, from

        1)      Selling, marketing, advertising, importing or purchasing WeatherBeater products manufactured by Winfield under the infringing "WeatherBeater" name or infringing packaging appearance of Winfield as detailed in this Complaint;

        2)      Unfairly competing with MacNeil; and

        3)      Causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by MacNeil, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

B.      An Order requiring Winfield to file with this Court and serve upon MacNeil within 30 days after the entry of the permanent injunction a report, in writing and under oath, setting forth in detail the manner and form in which Winfield has complied with the above subparagraph (A) of this prayer;

C.      An award to MacNeil of all profits received by Winfield from the sales and revenues of any kind made as a result of Winfield's sales of its WeatherBeater product, damages, to be determined, that MacNeil has suffered as a result of WeatherBeater's conduct, and the costs of this litigation; and

D.      Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT IX – UNJUST ENRICHMENT

70.     MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

71.     For many years, MacNeil has expended substantial sums of money creating, advertising, promoting, establishing and supporting its WEATHERTECH® mark and Trade Dress with its customers and Illinois and American consumers in general.  As a result of MacNeil's substantial investment and hard work over the years, as well as MacNeil's commitment to quality, excellence and customer service, MacNeil has earned tremendous goodwill and a fine reputation with consumers and the trade, who associate MacNeil with its mark and Trade Dress.

72.     Winfield is aware of the above facts, and has sought to wrongfully capitalize on MacNeil's fine reputation and goodwill by advertising, promoting and selling its product under the WeatherBeater name, which is an intentional attempt to copy and/or create a colorable imitation of MacNeil's mark.  Winfield further has created its packaging materials in an intentional attempt to copy and/or create a colorable imitation of MacNeil's Trade Dress.  As a result of Winfield's wrongful conduct, Winfield is able to free-ride off of MacNeil's substantial investment and hard-work by causing confusion among consumers in the marketplace and attempting to identify or associate its WeatherBeater floor liner product with MacNeil's product and/or confuse consumers that this is the case.

73.     Winfield unjustly has received the benefit of MacNeil's substantial investment in its WeatherTech floor liner product and its hard-earned goodwill and fine reputation.

74.     Winfield has been unjustly enriched.

75.     It would violate the principles of justice, equity and good conscience for Winfield to retain this benefit.

76.     To avoid an unjust enrichment, MacNeil should be awarded damages reflecting Winfield's enrichment, among other relief.

A.     Enter a permanent injunction restraining and enjoining Winfield and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Winfield, from

    1)     Selling, marketing, advertising, importing or purchasing WeatherBeater products manufactured by Winfield under the infringing "WeatherBeater" name or infringing packaging appearance of Winfield as detailed in this Complaint;

    2)     Unfairly competing with MacNeil; and

    3)     Causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by MacNeil, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

B.     An Order requiring Winfield to file with this Court and serve upon MacNeil within 30 days after the entry of the permanent injunction a report, in writing and under oath, setting forth in detail the manner and form in which Winfield has complied with the above subparagraph (A) of this prayer;

C.     An award to MacNeil of all profits received by Winfield from the sales and revenues of any kind made as a result of Winfield's sales of its WeatherBeater product, damages, to be determined, that MacNeil has suffered as a result of WeatherBeater's conduct, and the costs of this litigation; and

D.      Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT X – VIOLATION OF THE ILLINOIS CONSUMER
## FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT – 815 ILCS 505 *et seq*.

77.      MacNeil reasserts and incorporates by reference the allegations of its Complaint at paragraphs 1 through 23 as if fully set forth herein.

78.      In violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Winfield has engaged in at least the following unfair and/or deceptive acts or practices:

      a)      By its use of its infringing name "WeatherBeater" and its infringing and confusing colorable imitation of MacNeil's Trade Dress, Winfield has confused consumers as to the origins of the WeatherBeater product and falsely attempted to represent that WeatherBeater has some relation to MacNeil; and

      b)      Other false statements and misrepresentations, concealments, suppressions or omissions according to proof.

79.      Winfield intended for consumers to suffer confusion and to misrepresent the source of its WeatherBeater product.

80.      Winfield's unfair and deceptive acts and practices occurred in the normal course of trade or commerce.

81.      Through its unfair and deceptive acts and practices, Winfield has harmed MacNeil and American consumers of its WeatherBeater product.

A.      Enter a permanent injunction restraining and enjoining Winfield and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Winfield, from

      1)      Selling, marketing, advertising, importing or purchasing WeatherBeater products manufactured by Winfield under the infringing "WeatherBeater" name or infringing packaging appearance of Winfield as detailed in this Complaint;

2)      Unfairly competing with MacNeil; and

3)      Causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by MacNeil, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to MacNeil.

B.      An Order requiring Winfield to file with this Court and serve upon MacNeil within 30 days after the entry of the permanent injunction a report, in writing and under oath, setting forth in detail the manner and form in which Winfield has complied with the above subparagraph (A) of this prayer;

C.      An award to MacNeil of all profits received by Winfield from the sales and revenues of any kind made as a result of Winfield's sales of its WeatherBeater product, damages, to be determined, that MacNeil has suffered as a result of WeatherBeater's conduct, and the costs of this litigation;

D.      An award to MacNeil for its costs and attorneys' fees for this litigation; and

E.      Grant MacNeil such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## JURY TRIAL DEMAND

MacNeil hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

MACNEIL AUTOMOTIVE PRODUCTS LIMITED

Dated:  June 30, 2010          By:      _____/s/ Robert S. Grabemann_____
                                        One of Its Attorneys

Robert S. Grabemann
Timothy M. Schaum
DASPIN & AUMENT, LLP
227 West Monroe
Suite 3500
Chicago, Illinois 60606
(312)258-1600